IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANNE-MARIE AULD, Individually and on behalf of her deceased infant son, So'yazhi,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff Anne-Marie Auld ("Plaintiff" and/or "Ms. Auld") brings this action for the wrongful death of her son, Defendant's agents' negligence, and other wrongful and tortious acts committed by Defendant's agents. This action arises out of both federal and state law for damages resulting from the unlawful conduct of Defendant's agents.

Ms. Auld has successfully performed her essential job functions for her employer, Bureau of Indian Affairs ("BIA" or "Agency") since she began working for the Agency in 2016. All throughout her employment, the Agency was aware that Ms. Auld suffered from a permanent disability, epilepsy, and accordingly, from the day she was hired, the Agency had permitted her to telework up to three days a week. This all changed, however, in December 2019 when suddenly the Agency rescinded her ability to telework and told her she had to submit formal paperwork to formally request a reasonable accommodation for her medical disability.

Ms. Auld responded immediately, and by December 11, 2019, Ms. Auld had returned the paperwork to her supervisor, Cheryl Sakiestewa, formally requesting a reasonable accommodation on account of not only her permanent epilepsy disability, but also her temporary

1

pregnancy disability. Because she was pregnant, the absence of a reasonable accommodation created new medical risks. As she explained to her supervisor—as well as numerous other Human Resources ("HR") employees at the Agency—she needed her requested reasonable accommodation to prevent seizures which would jeopardize the health of her pregnancy. As time passed, she repeatedly wrote to her supervisor and other HR staff, informing them that she was now having seizures, and furthermore, that these seizures were causing pregnancy complications.

For almost two full months, no one responded to Ms. Auld's December 11 request for a reasonable accommodation. Although the Agency's own guidelines mandate a fifteen-business day deadline for responding, Ms. Auld's request for a reasonable accommodation was not granted until February 3, 2020—34 business days after she made her request, and four days after the miscarriage and death of her baby boy, So'yazhi.

In refusing to respond to Ms. Auld's request for a reasonable medical accommodation, the Agency did not act in good faith. There is no reasonable justification or excuse for the Agency's failure to act. Given the fact that the Agency's own internal deadline to respond is only fifteen days, and the Agency took a total of fifty-four, the Agency's delay in responding was outrageous, indecent, and shocked the conscious. The Agency was also aware that the failure to grant Ms. Auld the ability to telework was causing her to have seizures and pregnancy complications. And yet the Agency did nothing—until it was too late.

This type of Agency misconduct goes far beyond the proscriptions of the Rehabilitation Act. Congress passed the Rehabilitation Act to prevent discrimination in the workplace, and furthermore, to ensure that individuals with disabilities can maintain successful employment alongside their fully-abled colleagues. The Rehabilitation Act was not passed to prevent federal agencies from committing tortious, negligent acts that result in the death of a child. The Federal Tort Claims Act, therefore, provides the only appropriate vehicle to truly remedy Ms. Auld for

the highly personal, tragic loss she suffered when the Agency's tortious and negligent conduct caused the death of her son, So'yazhi.

## PARTIES

1. Plaintiff Anne-Marie Auld is a citizen of the Navajo Nation. She is a resident of Howard County, Maryland. Since August 2016, she has been an employee of the BIA, serving as a Budget Analyst in the Division of Program Management and Coordination.

2. Defendant United States of America has waived its sovereign immunity from suit for actions of its employees conducted in the course and scope of their employment.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this cause of action pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671, *et seq.,* because the claim arises from conduct of federal government agents and Plaintiff has exhausted her administrative remedies.

4. This Court has exclusive jurisdiction over tort claims brought against the United States pursuant to 28 U.S.C. § 1346(b).

5. Ms. Auld filed her Federal Tort Claim Act claims on January 28, 2022, and the Department of the Interior Bureau of Indian Affairs denied her claims on July 8, 2022. Plaintiff's claims are now ripe for adjudication.

6. Venue is proper in the U.S. District Court for the District of Columbia under 28 U.S.C. § 1391(b)(1)-(2) and § 1402(b) because the United States is a Defendant, and substantial parts of the events giving rise to these claims occurred in the District.

## STATEMENT OF FACTS

7. Ms. Auld is a citizen of the Navajo Nation and, therefore, identifies as a Native and/or Indigenous woman.

8. Ms. Auld has served in the BIA since August of 2016.

9.   Before accepting an offer of employment with the BIA, Ms. Auld informed Leroy Bohling, that she had a permanent disability, specifically epilepsy. Ms. Auld informed Mr. Bohling that she needs a workplace accommodation that will allow her to telework up to three days a week, as teleworking lessens the amount of time she spends commuting to work, increases the amount of sleep she is able to get, and that in turn lessens her stress, which results in her experiencing fewer seizures.

10.   Mr. Bohling informed Ms. Auld that her request for a medical accommodation would be granted and implemented as soon as she learned her job, and should she agree to work for the BIA, she would be able to telework up to three days a week. As a result of this statement, Ms. Auld accepted the offer of employment from the BIA, and she began work in August 2016, as a Budget Analyst in the Division of Program Management and Coordination.

11.   Since beginning her tenure at the BIA, Ms. Auld has relied on the Rehabilitation Act workplace accommodations due to her epilepsy.[1]

12.   Forty-one months later, on December 6, 2019, Ms. Auld was assigned a new supervisor, Cheryl Sakiestewa, who informed her that her accommodations for epilepsy were being rescinded because they were not "official" because Ms. Auld had not completed the necessary process.

13.   As of December 2019, Ms. Auld's prior supervisors (Leroy Bohling, Mark Kimball, Linda Tatum, Dawn Selwyn, Cameron McCormick, and Cheryl Sakiestewa) were all made aware of her medical condition and up to that point, Ms. Auld had been receiving three days per

---

[1] The American Disabilities Act ("ADA") does not cover the executive branch of the federal government. The executive branch is covered by Title V of the Rehabilitation Act of 1973, which prohibits discrimination in services and employment on the basis of disability and which is a model for the requirements of the ADA. Federal employees and applicants are covered by the Rehabilitation Act of 1973, instead of the ADA. The protections are largely the same.

week of telework to accommodate for her epilepsy; no one had informed her, before December 2019, that her accommodations were not "official" or that she had somehow failed to comply with a requisite process.

14. This decision immediately caused hardship on Ms. Auld as she lives in Columbia, MD, and her commute to the office lasts from two hours and 30 minutes to four hours (traffic dependent).

15. On December 9, 2019, Ms. Auld emailed Catina Marsh and Carl Renville to ask them to doublecheck and verify that her medical documentation for her permanent epilepsy disability was in fact included in her file.

16. On December 9, 2019, Ms. Auld also informed Ms. Marsh and Mr. Renville that the loss of her ability to telework left her in a vulnerable position because she was pregnant, stating: "Currently I am being told that all telework accommodations are being temporarily suspended, thereby leaving me in a vulnerable position as I am not just an epileptic, but currently pregnant as well."

17. Following Ms. Sakiestewa's statement that Ms. Auld's accommodation to work from home had been rescinded, Ms. Auld completed the required training and resubmitted paperwork from her neurologist that requested that she be given the maximum telework days possible to accommodate her epilepsy. Ms. Auld submitted the required accommodation form on December 11, 2019, regarding her epileptic condition.

18. Thus, as of December 11, 2019, the Agency had possession of medical documentation concerning Ms. Auld's permanent epilepsy disability and, furthermore, the Agency was aware of Ms. Auld's pregnancy and the fact that the loss of her ability to telework would risk increased seizure activity and create pregnancy complications.

19. On December 11, 2019, Ms. Auld emailed her supervisor, Cheryl Sakiestewa, copying Human Resources Officer Carl Renville, and requested a reasonable accommodation to be able to telework on account of her permanent disability of epilepsy and temporary disability of pregnancy.

20. Specifically, Ms. Auld's December 11, 2019, email informed the Agency that she was: "putting BIA on notice that my epileptic condition has been discussed with my current supervisor who has currently rescinded all telework. This requirement is exacerbating my condition with a severe lack of sleep, in addition to the stress it is causing with my previously set schedule. I am documenting this conversation, as I am currently pregnant, and wish to avoid any seizure activity."

21. Ms. Sakiestewa forwarded Ms. Auld's December 11 email to Johnna Blackhair and Mr. Holiday on December 11, 2019.

22. The Agency's Personnel Bulletin 14-01, 6.3 provides that once Agency personnel have received a request for a reasonable medical accommodation, "[t]he decision memorandum shall be emailed, mailed or presented to the individual within 15 business days or sooner."

23. Seven days later, Ms. Auld still had not received a response. On December 18, 2019, Ms. Auld followed up on her accommodation request and alerted Cheryl Sakiestewa and Carl Renville that she was experiencing worsening pregnancy complications due to her epilepsy and the fact that she was no longer permitted to telework.

24. In the December 18, 2019, email communication, Ms. Auld informed Ms. Sakiestewa and Mr. Renville that she had had a seizure following her loss of telework, and she further explained that the absence of any reasonable accommodation was creating pregnancy complications, stating: "I am currently awaiting a response to my request for ADA accommodation. If different documentation is needed, please let me know, as I have heard

nothing on the matter. I suffered a seizure on 12/15/19, as confirmed by my neurologist. Additional EEG testing will be required this week. I am currently facing pregnancy complications in addition to this situation."

25. On January 8, 2020, Ms. Auld informed Ms. Pierre-Louis of her worsening epilepsy symptoms and pregnancy complications resulting from the lack of a reasonable accommodation; she again included medical documentation from her doctors. Specifically, Ms. Auld wrote: "As of Dec 11, 2019, my telework was rescinded. Immediately my epilepsy (covered under ADA) has flared up as the factors that induce seizures are lack of sleep/stress/anxiety, which are provided in medical documentation (exhibit A, exhibit B) . . . . My epilepsy in conjunction with my pregnancy and the increase of seizures has now secured me the label of having 'pregnancy complications.' I put the BIA on notice as to my situation (exhibit G) and have received no response."

26. On January 13, 2020, Ms. Auld provided her supervisor, Ms. Sakiestewa, with a request for telework from her OBGYN. The doctor faxed this request to Mr. Renville on January 15, 2020.

27. No one at BIA HR ever responded to Ms. Auld's accommodation requests in December or January, nor did anyone in BIA HR inform her of the status of her December 11 application. While Ms. Auld waited for BIA HR to consider, process, and respond to her application, her condition continued to worsen—as she was being denied the reasonable accommodation she had previously been granted.

28. On January 24, 2020, as her pregnancy complications continued to worsen due to her inability to telework, Ms. Auld emailed Formal Complaint's Manager Ms. Gay and Equal Employment Specialist Ms. Marsh regarding the Agency's inaction surrounding Ms. Auld's repeated reasonable accommodation requests, stating that the effects of the Agency's inaction

7

concerning her reasonable accommodation requests "on [her] current pregnant state are IMMEDIATE."

29. On January 27, 2020, Ms. Auld once again followed up again with her supervisor, Ms. Sakiestewa, regarding her December 11, 2019, request for a reasonable accommodation.

30. As of January 27, 2020, Ms. Auld had still not received a single response from anyone from the Agency regarding her December 11, 2019, request for a reasonable accommodation.

31. On January 27, 2020, Mr. Renville emailed Ms. Blackhair, Mr. Holiday, and Ms. Pierre-Louis stating that Ms. Sakiestewa was Ms. Auld's supervisor, but Ms. Sakiestewa "[wa]s being non-responsive" to Mr. Renville; that "Ms. Auld has a request in for reasonable accommodation which needs to be responded to"; and that "Management faces considerable risk of liability if it continues to ignore her requests."

32. On January 28, 2020, more than 47 days after Complainant had submitted her request for a reasonable accommodation, Ms. Auld finally received a response from Ms. Sakiestewa acknowledging her numerous requests for reasonable accommodation. This response, however, only acknowledged Ms. Sakiestewa's receipt of Ms. Auld's request for a reasonable accommodation; Ms. Sakiestewa neither denied nor granted Ms. Auld's request, and she did not explain the reason for her 31-business day delay nor did she request any additional medical documentation or information.

33. Ms. Auld worked in the office every workday from December 1, 2019, through December 31, 2019, except December 3, 4, 6, 17, 20, 23, and 27, excluding federal holidays.

34. Ms. Auld worked in the office every workday from January 1, 2020, through January 29, 2020, the day before the death of her baby boy, except January 10, 21, and 22, excluding federal holidays.

35. Although Ms. Auld was experiencing pregnancy complications in December 2019 and January 2020 resulting from the absence of a reasonable medical accommodation permitting her to telework, Ms. Auld could not afford to go on leave without pay because she depends on her income to provide shelter, food, and clothing for herself and her family.

36. Because she was not permitted to telework, the seizures from Ms. Auld's permanent epilepsy disability continued to worsen during the month of January 2020.

37. This increase in seizure activity further complicated her pregnancy and jeopardized the life of her baby.

38. Ms. Auld was working at the Agency office on January 29, 2020, when she began to have a miscarriage and was rushed to the hospital.

39. Ms. Auld suffered a miscarriage on January 30, 2020, and she lost her baby boy, So'yazhi.

40. The Agency did not inform Ms. Auld that the Agency was going to grant her December 11, 2019, request telework until February 3, 2020, four days *after* the death of her baby boy, So'yazhi.

41. Ms. Auld has had to undergo multiple additional surgeries, procedures, and additional medical treatment due to the miscarriage of her baby boy So'yazhi. These additional medical complications forced her to use all of her sick and Family Medical Leave Act time, in addition to causing her and her family severe emotional distress and suffering.

42. Ms. Auld and her family have suffered severe emotional distress, pain, and suffering from the loss of So'yazhi (Little Star).

43. Ms. Auld's injuries are highly personal in nature. The loss of a child is a highly personal loss.

## CLAIMS FOR RELIEF

### COUNT I: Wrongful Death of Baby So'yazhi

44. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

45. Plaintiff brings this claim for wrongful death as mother of her baby boy So'yazhi.

46. At all times relevant to this lawsuit, the above-named federal employees were acting in the course and scope of their employment with the United States.

47. Plaintiff's claims under common law negligence are actionable under the District of Columbia's wrongful death statute, D.C. Code § 16-2701.

48. Decedent So'yazhi died because Defendant's agents acted with negligence and did not perform their jobs as they were required to do. Defendant's agents failed to grant Ms. Auld the reasonable medical accommodation she requested in a timely manner. This failure was the proximate cause of the death of So'yazhi.

49. As a direct result of the wrongful acts committed by Defendant's agents, Plaintiff endured pain and suffering and incurred burial expenses, medical expenses, counseling expenses, and other expenses related to the extreme trauma of losing a child.

### COUNT II: Common Law Negligent Infliction of Emotional Distress

50. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

51. Defendant's agents had a duty to exercise reasonable care toward Ms. Auld.

52. Defendant's agents breached that duty by negligently failing to respond to her request for a reasonable medical accommodation for a total of fifty-four days, far beyond the fifteen-business-day deadline imposed by internal BIA guidelines.

53. Defendant's agents' negligent disregard for Ms. Auld's request for a medical accommodation, including their repeated failures to respond to her clear and consistent communications, caused severe emotional distress to Ms. Auld.

54.     From December 11, 2019, to January 30, 2020, Plaintiff continuously updated Defendant's agents with her deteriorating medical conditions (including by providing medical documentation from doctors), and in response, Defendant's agents exhibited negligent disregard for the well-being of Ms. Auld and her child.

55.     Defendant's agents' negligent failure to respond to Ms. Auld's repeated requests for a medical accommodation was outrageous, indecent, and shocked the conscience.

56.     Defendant's agents' negligent conduct directly and proximately caused Ms. Auld to suffer severe emotional distress during her pregnancy with So'yazhi, as Defendant's agents' failure to respond to her requests resulted in an increase in seizures, and with each seizure came a higher degree of fear that she would lose her child.

57.     Defendant's agents' negligent conduct caused the death of Ms. Auld's child, and furthermore, caused Ms. Auld to suffer severe emotional distress.

58.     As a direct and proximate cause of Defendant's agents' negligent conduct, Ms. Auld continues to suffer extreme emotional distress, as her injuries are highly personal in nature. The loss of a child is a highly personal loss. Ms. Auld has been forced to seek treatment for depression and anxiety through costly medication and counseling. Over two years after her son's death, Ms. Auld still does not know why Defendants did not respond to her request for a medical accommodation within the 15 business days that BIA policies require.

### COUNT III: Common Law Negligence in Training and Supervising

59.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

60.     At all times relevant to this case, Johnna Blackhair and Cheryl Sakiestewa acted within the scope of their duties as employees of the DOI and BIA.

61.     The DOI and BIA had a duty to properly hire, train, supervise, discipline and—where necessary—terminate its personnel in order to protect all DOI and BIA employees against

dangers reasonably likely to result from the absence of proper hiring, training, supervision, and firing.

62. At all times relevant to this case, Ms. Sakiestewa was the direct supervisor of Ms. Auld, and it was her responsibility to respond to Ms. Auld's request for a reasonable medical accommodation within fifteen business days.

63. At all times relevant to this case, Ms. Sakiestewa was under the direct supervision of Ms. Blackhair.

64. Ms. Blackhair had a duty to properly train, supervise and control Ms. Sakiestewa and to protect employees working under Ms. Sakiestewa from dangers reasonably like to result from the absence of proper training, supervision and control.

65. Defendant's agents, and specifically Ms. Blackhair, knew or should have known of the dangers that could result from Ms. Sakiestewa's failure to follow agency guidelines regarding responding to employee requests for medical accommodations.

66. Defendant's agents, including Ms. Blackhair, have breached their federal trust duty and responsibility to protect and preserve the lives of Native women and Native children through their failure to adequately hire, train, supervise, control, discipline, or terminate employees of the BIA and DOI who fail to follow agency guidelines regarding the health, safety, and welfare of Agency employees.

67. It has been two and a half years since the untimely death of Ms. Auld's baby boy, and still, to this day, the DOI and BIA have failed to investigate the circumstances around So'yazhi's death, and furthermore, Defendant's agents have failed to discipline any of the employees and supervisors who failed to follow Agency guidelines and respond to Ms. Auld's request for a reasonable medical accommodation.

68. Defendant's agents' breach of these duties directly and proximately caused Ms. Auld's injuries and the death of her baby boy.

**COUNT IV: Common Law Negligence Leading to the Death of Baby So'yazhi**

69. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

70. At all times relevant to this case, Ms. Sakiestewa and Ms. Blackhair acted within the scope of their duties as employees of the BIA.

71. After receiving a request for a medical accommodation from Ms. Auld, and after receiving medical documentation demonstrating that Ms. Auld suffers from epilepsy, and after receiving medical documentation that the loss of Ms. Auld's ability to telework was jeopardizing her high-risk, complicated pregnancy, Ms. Sakiestewa and Ms. Blackhair took no action to promptly respond to Ms. Auld's need for a medical accommodation.

72. Ms. Sakiestewa negligently ignored the BIA's fifteen-business-day deadline for responding to requests for medical accommodations.

73. Ms. Blackhair allowed herself and the staff she directed to negligently ignore the BIA's fifteen-business-day deadline for responding to requests for medical accommodations.

74. Ms. Blackhair's negligence was so extreme that she permitted her employees' non-responsiveness to Ms. Auld's repeated and urgent requests for a medical accommodation to continue for fifty-four days.

75. As the supervisor of Ms. Auld's supervisor, Ms. Blackhair owed Ms. Auld a duty to exercise reasonable care, including responding to requests for a reasonable medical accommodation within a reasonable timeframe. According to BIA policy, that timeframe is fifteen business days.

76. During the fifty-four days from December 11, 2019, until January 30, 2020, when Ms. Auld suffered a miscarriage and lost baby So'yazhi, Ms. Blackhair took no action to address the

fact that Ms. Sakiestewa, was not responding to Ms. Auld's requests for a reasonable medical accommodation.

77.     As a proximate cause of these negligent acts and omissions, Ms. Auld sustained serious bodily injury and endured great pain, suffering, and mental anguish; ultimately, she lost her baby boy, causing her severe emotional trauma and distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

1. For judgment in such amounts as shall be proven at the time of trial;

2. For an award of attorney's fees and costs as provided by any applicable provision of law;

3. For such other and further relief as the Court deems just and equitable;


Respectfully submitted this 14th day of October, 2022.

/s/ Mary Kathryn Nagle
Mary Kathryn Nagle, Esq.
(Bar No. 1033507)
P.O. Box 506
McLean, VA 22101
202-407-0591
mkn@mknaglelaw.onmicrosoft.com

Timothy Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

*Attorneys for Plaintiff Anne-Marie Auld*